IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-850-FL

| | | |
|---|---|---|
| MIRIAM ELISE REISER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Miriam Elise Reiser ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that she is not disabled.[1] The case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 22, 31), which have been fully briefed (*see* D.E. 23, 32, 36). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 3rd public D.E. dated 29 July 2015). For the reasons set forth below, it will be recommended that the Commissioner's motion be granted, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I. BACKGROUND

## A. Case History

Plaintiff filed an application for DIB and SSI on 11 August 2011, alleging a disability onset date of 11 January 2011. Transcript of Proceedings ("Tr.") 13. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 13. On 24 January 2013, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 13, 32-62. The ALJ issued a decision denying plaintiff's claim on 13 June 2013. Tr. 13-26. Plaintiff timely requested review by the Appeals Council. Tr. 8-9. Plaintiff's request was denied on 22 September 2014. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 21 November 2014, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

## B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. §

1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. . . .

> (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [§ 404.1509 for DIB and § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings ["Listings"] in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled. . . .

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  . . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis.  *Pass*, 65 F.3d at 1203.  The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy.  *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1523, 416.923.

### C.    ALJ's Findings

Plaintiff was 19 years old on the alleged onset date of disability and 21 years old on the date of the hearing. *See* Tr. 24 ¶ 7. Plaintiff has a limited education. Tr. 24 ¶ 8. She has past relevant work as a salesperson and waitress. Tr. 24 ¶ 6.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 15 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: arthropathy attributed to Lyme disease; anxiety; depression; and osteoarthritis of the right knee. Tr. 15 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 16 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work[2] with limitations. Tr. 18 ¶ 5. The limitations are as follows: "Due to her depression and anxiety, she is limited to work requiring only simple, repetitive, routine tasks ["SRRTs"]. She should have no more than an occasional interaction with other workers and the general public." Tr. 18 ¶ 5.

---

[2] See 20 C.F.R. §§ 404.1567(b), 416.967(b) (definition of "light work"); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," http://www.oalj.dol.gov/libdot htm (last visited 26 Jan. 2016). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a salesperson and waitress because the requirements of these jobs exceed plaintiff's RFC. Tr. 24 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of marker, mail clerk, and router. Tr. 25 ¶ 10. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date, 11 January 2011, through the date of his decision, 13 June 2013. Tr. 25 ¶ 11.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id.*

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III.   OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ erred by not properly assessing certain medical opinion evidence, not expressly addressing plaintiff's capacity to perform certain functions, not accounting for certain of plaintiff's limitations in his RFC determination, and not properly assessing plaintiff's credibility. The court will address each of these contentions in turn below.

## IV.   ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE

Plaintiff contends that the ALJ erred with respect to the medical opinions of plaintiff's treating family physician Sabra M. Bellovin, M.D., and consulting examining physician Vinod Shah, M.D. The court disagrees.

### A.   Applicable Legal Standards

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(b), 416.927(b); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, and any other factor that tends to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No.

0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the opinion of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted by* 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier v. Astrue,* No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the opinions of an examining source than the opinions of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source. *See*, *e.g.*, Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996).

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3.

### B.  Dr. Bellovin's Opinions

Dr. Bellovin had nine office visits with plaintiff between January 2010 and September 2012 that are documented in the record. *See* Tr. 567-660; 732-59. The ALJ accurately summarized Dr. Bellovin's treatment of plaintiff as follows:

> Although the claimant was reportedly treated by Dr. Bellovin as early as 2005, the first submitted records date to January 2010. The claimant was living in South Carolina and working in a horse barn and enjoying being around the animals. Her complaint was hand stiffness and some muscle spasms, and excessive sweating. She was given medication and her four month follow up in May 2012 noted an improvement in symptoms and [a] within normal limits physical examination.
>
> In October 2010 her complaints were of fatigue, exhaustion, inability to sleep and undergoing stress and anxiety. The undersigned notes the claimant was working an overnight shift as a waitress in that particular time frame, as stated in the office visit notes. Her physical examination was within normal limits other than some tenderness in her right knee. Her medications were updated. The office visit notes for April 26, 2011, showed an exacerbation of headaches, fatigue and insomnia. She had intermittent fever and chills. She had been seen in the emergency room for right upper quadrant abdominal pain, assessed as a gall bladder attack. She was also noted to have non-obstruction kidney stones by ultrasound. Her physical examination was unremarkable and new laboratory work was requested.
>
> In April 2011 her lab reports indicated a negative Lyme test, normal complete blood work and liver function tests, negative for antinuclear antibody, and borderline Vitamin D. A blood parasite test in June 2011 revealed no parasites but did show free radical damage. Testing for Rocky Mountain Spotted fever in July 2011 was negative (Exhibit 14F).
>
> The claimant's office visit notes with Dr. Bellovin in September 2012 noted her complaints of widespread joint pain and fatigue. She had headaches and reportedly was to undergo evaluation by an orthopedist for neck and back pains. The only finding on examination was prominent proximal interphalangeal joints (Exhibit 19F).

Tr. 19 ¶ 5.

Dr. Bellovin also completed two medical source statements. In the statement dated 5 April 2012 (Tr. 669-71), Dr. Bellovin identifies plaintiff's diagnoses, which include Lyme disease; describes the basis for the Lyme disease diagnosis; lists the symptoms of it plaintiff has,

namely, "polyarthralgias, cognitive difficulties, and debilitating fatigue/exhaustion affecting her ability to function" and "panic attacks"; addresses the consistency of plaintiff's symptoms with the diagnoses; discusses the kind and effectiveness of treatment plaintiff has had; and states plaintiff's prognosis of continued symptomology. Tr. 669-71. In addition, in response to the questions whether plaintiff would be able to perform sedentary work involving only SRRTs on a fulltime basis and, if not, why, Dr. Bellovin stated:

> Due to persistent pain and pervasive exhaustion, as well as cognitive difficulties, I do not feel that she is capable of even sedentary work.
>      . . . .
> She is in constant pain, exhausted, and has to rest after even minor tasks such as grocery shopping, and she is then not able to do anything for the rest of the day. Her attempts to work have worsened her physical condition and her ability to function. Adequate rest and naps would help her immune system and her overall well being.

Tr. 670. Dr. Bellovin further opined that on average plaintiff would likely be absent from fulltime employment for more than four days per month. Tr. 670.

In her other, much briefer medical source statement dated 30 December 2012 (Tr. 829), Dr. Bellovin stated that plaintiff "continues to suffer from polyarthralgias, myalgias, headaches, back pain, bruising, profuse sweats, seeing visual 'stars' and exhaustion." Tr. 829.

The ALJ gave Dr. Bellovin's opinions regarding plaintiff's capacity to work little weight:

> Dr. Bellovin's medical source statement as to her opinion of the claimant's ability to perform work activities is conclusory, providing very little explanation of the evidence relied on in forming that opinion, and given little weight. Indeed, it would appear that Dr. Bellovin's assessment of the claimant's capacity for work-related activities in April 2012 (Exhibit 16F) and December 2012 (Exhibit 22F) was overshadowed by the claimant's subjective complaints, which are not supported by Dr. Bellovin's own clinical findings and notes (Exhibit 14F and 19F). The claimant's testimony that she is essentially bedridden is not reflected in her limitations as expressed to Dr. Bellovin, at least as recorded in the office visit notes. The claimant was noted to have widespread joint pain and fatigue, but not to be bedridden the majority of the time. Her physical examinations noted the claimant to be in no apparent distress, her neck supple but no other comment on finding limitations of range of motion or lack of strength. She merely noted

prominent proximal interphalangeal joints (Exhibit 19F). The claimant's neurological workup in November 2012, previously discussed, did not note symptoms, findings or limitations that the claimant was bedridden. She had full range of motion and strength in her extremities (Exhibit 21F). The claimant's most recent mental health treatment and examinations (Exhibit 13F, 17F) did not note severe cognitive limitations, and indeed she did well on portions related to memory and attention and concentration.

Tr. 23 ¶ 5.

Plaintiff contends that the ALJ failed to apply proper factors in evaluating Dr. Bellovin's opinions, but instead looked to only whether plaintiff was bedridden the majority of the time. A plain reading of the ALJ's decision shows the contention to be baseless. The ALJ considered the extent to which Dr. Bellovin explained the evidence she relied on, the support for the opinions in her clinical findings and notes, the degree of her reliance on plaintiff's allegations, and the consistency of her opinions with other medical evidence. All of these are proper considerations in assessing the weight to be accorded medical opinions. In particular, contrary to plaintiff's contention, the ALJ could appropriately take into account what he determined (properly, as discussed below) to be plaintiff's lack of credibility in evaluating Dr. Bellovin's reliance on plaintiff's subjective complaints. *See, e.g.*, *Rayfield v. Astrue*, No. 4:09–00061–DCN–TER, 2010 WL 1071418, at *6 (D.S.C. 17 Feb. 2010) (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)), *rep. & recomm. adopted by* 2001 WL 1068689, at *15 (18 Mar. 2010).

Moreover, again, contrary to plaintiff's contention, substantial evidence supports the ALJ's attribution of little weight to Dr. Bellovin's opinions. Dr. Bellovin's treatment notes can reasonably be read as failing to show the severity of limitation she posited in her opinions even though, as the ALJ's summary of Dr. Bellovin's notes indicates, the notes do document that plaintiff suffered from some degree of limitation from her impairments, including fatigue and headaches. *See* Tr. 19 ¶ 5.

Similarly, evidence from other providers specified by the ALJ can properly be interpreted as not showing limitations of the severity found by Dr. Bellovin. This evidence includes the neurological workup of plaintiff in November 2012 (*see* Tr. 805-10, 815), which, as the ALJ noted, determined that plaintiff's "neurological examination was entirely within normal limits, and she had full and normal motor strength in her arms and legs." Tr. 22 ¶ 5. The ALJ also cited the report (in Exhibit 13F) on plaintiff's most recent psychiatric consultative examination, conducted by psychiatrist Anthony Carraway, M.D. on 28 October 2011 (Tr. 562-66; 20-21 ¶ 5 (ALJ's summary of report)). Among other benign findings was Dr. Carraway's attribution to plaintiff of a Global Assessment of Functioning ("GAF")[3] score of 67-72, indicating only mild

---

[3] The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).

70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).

symptoms. *See* Tr. 565; 21 ¶ 5. Additionally, citing Exhibit 17F, the ALJ referenced plaintiff's most recent psychiatric treatment, from January to April 2012 (Tr. 672-93; 21 ¶ 5 (ALJ's summary of treatment)), which includes an evaluation on 14 March 2012 by psychiatrist Stephan Baum, M.D. (Tr. 675-77; 21 ¶ 5). Among other salient points, although Dr. Baum gave plaintiff a GAF score of 50 (Tr. 677), the licensed clinical social worker providing plaintiff psychotherapy gave her a GAF score of 60 at a 23 April 2012 visit (Tr. 681; 21 ¶ 5).

As to the extent of Dr. Bellovin's explanation of the evidence she relied on, she does not explain at all the evidence supporting her opinion that "cognitive difficulties" would preclude plaintiff from performing sedentary work. There is a prior reference to panic attacks, but Dr. Bellovin does not relate them to her opinion on plaintiff's ability to work. Dr. Bellovin's statement does discuss in detail evidence relating to plaintiff's physical impairments, including laboratory findings. She does not, however, relate this evidence to specific functional limitations. Thus, the court cannot say that the ALJ erred in characterizing Dr. Bellovin's explanation of the evidence she relied on as conclusory.

Plaintiff points to other evidence of record which she contends shows her to be disabled. She is essentially inviting the court to reweigh the evidence, which it may not do.

The court concludes that the ALJ's assessment of Dr. Bellovin's opinions was proper. The court accordingly rejects plaintiff's challenge to it.

---

30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34.

### C.    Dr. Shah's Opinion

Dr. Shah examined plaintiff on 1 October 2011. *See* Tr. 557-60. He stated his "General Findings" from the examination as follows:

> The patient has a history of Lyme disease, babesiosis, and fibromyalgia. It seems that generally with those diseases, she would not have any abnormal physical finding, at least I can say, but is sure for fibromyalgia. No swelling, tenderness, crepitus, effusion, kyphosis, or scoliosis. Straight leg test was negative. This patient has multiple diseases together, which can produce significant fatigue and a person functionally cannot perform as it is so frequent that probably she is disabling [sic] continuously. So she really would qualify for moderate-to-severe impairment for all the limitations she is going to have.

Tr. 559.

> The ALJ gave no weight to Dr. Shah's evaluation of plaintiff, stating:

> The undersigned gives no weight to the comprehensive consultative physical evaluation on referral for disability examination conducted by Vinod Shah, M.D. on October 1, 2011. Dr. Shah relied strictly on the claimant's assertion of symptoms and prior medical history without findings on objective examination. As he acknowledged her previous magnetic resonance imaging scan of her brain and cardiac testing were within normal limits. The examination required to justify a diagnosis of fibromyalgia was not conducted, even though some of her symptoms were similar. He found the claimant capable of sitting, standing and walking 6 hours in an 8 hour workday, with minimal limitations for climbing, balancing, stooping, kneeling, crouching or crawling. His statement that she was limited to lifting and carrying no more than ten pounds was inconsistent with findings on examination of full range of motion and strength in her extremities. Her coordination, station, and gait were normal. His statement that her diagnoses would produce significant fatigue and not allow a person to function and rendering them disabled was inconsistent with his own examination. The claimant['s] subjective complaints were not verified by objective examination (Exhibit 12F).

Tr. 19-20 ¶ 5.

Plaintiff contends that the ALJ erred in pointing to plaintiff's normal results on strength and range of motion testing as a basis for rejecting Dr. Shah's opinions because Dr. Shah himself suggests that plaintiff's diseases would not produce abnormal physical findings. But the ALJ cited this testing to show an inconsistency in Dr. Shah's opinions. Again, the ALJ stated, "His

statement that she was limited to lifting and carrying no more than ten pounds was inconsistent with findings on examination of full range of motion and strength in her extremities." Tr. 20 ¶ 5. The internal consistency of a medical source's opinions is unquestionably a proper consideration in evaluating the weight due them. *See* 20 C.F.R. §§ 404.1520b, 416.920b (medical opinion and other evidence is inconsistent if it contains an "internal conflict"); *Nicholson*, 600 F. Supp. 2d at 753 n.1 ("[O]pinions by medical doctors which are internally inconsistent . . . are entitled to little or no weight."). Substantial evidence obviously supports this determination.

Plaintiff's further contention that the ALJ gives no other legitimate rationale for rejecting Dr. Shah's opinions also fails. Indeed, the ALJ points to another internal inconsistency in Dr. Shah's findings, stating, "His statement that her diagnoses would produce significant fatigue and not allow a person to function and rendering them disabled was inconsistent with his own examination." Tr. 20 ¶ 5. In particular, the opinion on disability was inconsistent with Dr. Shah's finding in his "Functional Assessment" that plaintiff could stand or walk about six hours in an eight-hour workday. Tr. 559. The ALJ's consideration of Dr. Shah's reliance on plaintiff's allegations of her limitations was, of course, also proper and supported by substantial evidence.

The court concludes that the ALJ's assessment of Dr. Shah's opinions was proper. The court therefore rejects plaintiff's challenge to it.

## V.    ADEQUACY OF ALJ'S FUNCTIONAL ANALYSIS

### A.    Applicable Legal Standards

In determining a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, the Fourth Circuit has declined to adopt

a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Rather, "remand may be appropriate where the ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### B.  Analysis

Plaintiff contends that the ALJ failed to meet the function-by-function analysis requirements under *Mascio*, in part, by making no explicit finding regarding plaintiff's ability to stand, walk, sit lift, or carry. But the definition of "light work" sets limits on each of these functions:

> The regulations define light work as *lifting* no more than 20 pounds at a time with frequent *lifting* or *carrying* of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of *walking* or *standing*—the primary difference between sedentary and most light jobs. A job is also in this category when it involves *sitting* most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work . . . .
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent *lifting* or *carrying* requires *being on one's feet* up to two-thirds of a workday, the full range of light work requires *standing* or *walking*, off and on, for a total of approximately 6 hours of an 8-hour workday. *Sitting* may occur intermittently during the remaining time.

Soc. Sec. Ruling 83-10, 1983 WL 31251, at *5-6 (1983) (emphasis added). Thus, by restricting plaintiff to light work in his RFC determination, the ALJ was implicitly making findings regarding plaintiff's capacity to stand, walk, sit, lift, and carry. In particular, he was adopting the limitations on these functions embedded in the meaning of light work.

Moreover, the ALJ explained why he limited plaintiff to light work. In rejecting the opinion of a consulting physician, Margaret Parrish, M.D., that plaintiff could perform medium

work, the ALJ stated, "[i]n light of the claimant's history of arthropathy, the undersigned concludes that the claimant can do no more than light work." Tr. 23 ¶ 5.

Plaintiff also argues that the ALJ erred by not addressing whether plaintiff could sustain physical activity on a regular and continuing basis. Under Social Security Ruling 96-8p, however, a claimant's RFC signifies an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" and "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2. Thus, "[a]s defined, any assessment of a claimant's RFC is necessarily an assessment of the claimant's ability to work a forty-hour work week." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09cv622, 2010 WL 6621693, at *14 (E.D. Va. 29 Dec. 2010). As noted, light work also assumes the ability to work an eight-hour workday. *See* Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6. Therefore, by not specifying otherwise, the ALJ's decision indicates his determination that plaintiff could perform work "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2; *see Ricks*, 2010 WL 6621693, at *14.

The ALJ's decision makes clear why he did not find plaintiff unable to perform work on a regular and continuing basis. The reasons include his determination that plaintiff's allegations regarding the severity of the limitations imposed by her fatigue and other impairments are not fully credible. *See* Tr. 22 ¶ 5. He also, of course, discusses the lack of objective findings in the medical evidence of limitations of the severity plaintiff alleges, as previously discussed with respect to Dr. Bellovin's and Dr. Shah's records.

The court concludes that the ALJ performed an adequate function-by-function analysis in determining plaintiff's RFC. Unlike in *Mascio*, the court is not "left to guess about how the ALJ

arrived at his conclusions on [plaintiff's] ability to perform relevant functions." *Mascio*, 780

F.3d at 637. The court accordingly rejects this challenge to the ALJ's decision.

## VI. ALJ'S DETERMINATION ON PLAINTIFF'S CONCENTRATION, PERSISTENCE, OR PACE

### A. Applicable Legal Principles

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's

limitations in concentration, persistence, and pace by restricting the hypothetical question to

simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r*

*of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court reasoned:

> [T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.

*Id.* The court recognized that a claimant's limitation in concentration, persistence, or pace may

not translate into a limitation in the RFC, but held that the ALJ must explain if that is the case.

*Id.*

### B. Analysis

Here, the ALJ found that plaintiff had moderate difficulties in concentration, persistence,

or pace and, more specifically, "only moderate, intermittent problems with attention and

concentration." Tr. 17 ¶ 5.[4]  Plaintiff contends that, in contravention of *Mascio*, the ALJ failed

to account for these difficulties in his RFC determination. The court disagrees.

---

[4] The ALJ stated:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Her cognitive testing and reports of success while home schooling indicate she has only moderate, intermittent problems with attention and concentration.

Tr. 17 ¶ 5.

The ALJ addressed these difficulties in the RFC by limiting plaintiff to "no more than an occasional interaction with other workers and the general public" as well as SRRTs. Tr. 18 ¶ 5. While, as the Fourth Circuit held, the ability to perform SRRTs is distinct from the ability to stay on task, the two are related. Common experience teaches that it takes less attention and concentration to stay on task when performing simple tasks, as opposed to more complicated ones. Thus, inclusion of the limitation to SRRTs helps address plaintiff's difficulties with attention and concentration. Moreover, interaction with others can be a definite source of distraction.

The sufficiency of this combination of limitations is reinforced by the ALJ's determination that plaintiff's difficulties in this area comprise only "intermittent problems with attention and concentration." Tr. 17 ¶ 5. In addition, a nonexamining consulting psychologist, W.W. Albertson, Ed.D., found that plaintiff "has the ability to maintain attention and concentration long enough to complete simple tasks." Tr. 102.

Other courts in this circuit have held that limitations relating directly to attention and concentration together with a limitation to SRRTs are sufficient to account for a claimant's moderate difficulty with attention and concentration in accordance with *Mascio*. *See Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. 8 Sept. 2015) (limitation to "[SRRTs] with only occasional contact with the general public in an environment with few workplace changes . . . sufficiently accounted for [claimant's] difficulties with concentration and persistence"); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. 19 Aug. 2015) (ALJ accounted for claimant's difficulty with persistence and concentration through limitations to "no constant change" and "no loud noises," respectively, in addition to limiting claimant to no complex decision making); *Linares v. Colvin*, No. 5:14-CV-120, 2015 WL

4389533, at *4 (W.D.N.C. 17 July 2015) (ALJ "accounted for [claimant's] moderate limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact" while also including a limitation to SRRTs).

The court concludes that the ALJ adequately accounted in his RFC determination for the difficulties in attention and concentration he found plaintiff to have. The court accordingly rejects plaintiff's challenge to this aspect of the ALJ's RFC determination.

## VII.   ALJ'S DETERMINATION ON PLAINTIFF'S CREDIBILITY

Plaintiff testified to the effect that her impairments were disabling, rendering her bedridden. *See* Tr. 36-56. The ALJ found plaintiff's allegations not fully credible. Tr. 22 ¶ 5. Plaintiff contends that the ALJ erred in this determination. The court finds no error.

### A.      Applicable Legal Standards

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ

concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

### B.    Analysis

Here, the ALJ made the step one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19 ¶ 5. But at step two, he found plaintiff's allegations not to be fully credible. Tr. 22 ¶ 5. The ALJ explained in part as follows:

> The claimant's allegation that her impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity is inconsistent with the medical and other evidence of record and is not considered to be fully credible. Consequently her complaints are not found to be fully persuasive and have been given little weight.

Tr. 22 ¶ 5.

> The ALJ focused specifically on plaintiff's activities of daily living:

> In terms of the claimant's alleged limitations due to fatigue, in October 2010, she was working a[n] 11 PM – 7 AM shift as a waitress at a truck stop. She was considering applying with UPS. She also rides horses. She had difficulty sleeping but was working an overnight shift and trying to work during the day. The claimant in 2012 was advertising on Craigslist to provide pet sitting services in order to earn money. In March 2012 she had been at a shooting range. Despite her testimony she did not like to drive, in April 2012 she told her therapist she was tired from taking her aunt and uncle to all their appointments.

Tr. 22 ¶ 5.

Plaintiff contends that the ALJ's credibility analysis is erroneous because it relies on an erroneous evaluation of the opinions of Dr. Bellovin and Dr. Shah. This contention fails because, as discussed, the ALJ's evaluation of these opinions was proper.

Plaintiff also argues that the ALJ's analysis is not supported by substantial evidence. More specifically, she argues that in rejecting plaintiff's complaints of fatigue he relied on "isolated or intermittent activities that do not represent her overall functioning." (Pl.'s Mem. 8-

9).  The activities cited by the ALJ, though, include a prior arduous work schedule of plaintiff's, her consideration of a different job also of a seemingly arduous nature, her advertisement for another active job, and her participation in a physically active hobby.  These aspects of plaintiff's activities clearly are relevant to her allegations of fatigue.

Moreover, the ALJ's decision belies any notion that he considered only these activities; he recites in his decision plaintiff's testimony, in which she described more comprehensively her activities of daily living:

> The claimant testified at the hearing that she currently lived with her aunt and uncle.  In the past year her most troublesome symptoms were reported as fatigue, exhaustion, insomnia, anxiety and all over body and muscle pain.  Dr. Bellovin, a family medicine specialist, was reported to have an understanding of Lyme disease and that [was] why she first saw her.  She liked her as a doctor and stayed with her, but now has to find another provider as she will not accept Medicaid or private pay.  The claimant's fatigue was described as more of a brain fog than physical feeling.  She did have exhaustion with activity and seemed to have no strength to stand up.  She enjoyed trying to take care of her horse, brushing her and bringing her food and water.  When she felt like it, reportedly about twice monthly now, she also fitted her with a saddle and went riding.  The claimant estimated she had perhaps five good days a month.  On a really bad day, which occurs three-to-four times per week, she stays in bed with her meals brought to her, help her to the bathroom and she does not even feel like watching television.  The claimant testified that at times, these bad days string together for weeks at a time.  Her condition had worsened over the last year or so and she had been bed ridden more often than not.  She was unable to tolerate something like household chores for more than 30 minutes or to go shopping and relied on others.  She had friends but her social outings were few and far between.  The claimant's headaches reportedly were a daily occurrence for many years now.  According to the claimant her panic attacks were almost daily occurrences, and her therapist at [sic] was helping her deal with her past traumas.  It was an ongoing process.  Her knee scope had helped but she reportedly was now having a return of stiffness and more difficulty standing or walking.

Tr. 22 ¶ 5.

Moreover, as the ALJ's decision indicates, his consideration of plaintiff's activities of daily living comprised only a part of his credibility analysis.  Other evidence he considered included, as discussed, the records of Dr. Bellovin and the evaluation of Dr. Parrish.  This

additional evidence arguably constitutes substantial evidence supporting the ALJ's credibility analysis irrespective of her activities of daily living.

The court concludes that the ALJ did not err in his analysis of plaintiff's credibility. *See Yost v. Barnhart*, 79 Fed. Appx. 553, 555 (4th Cir. 2003) ("[Plaintiff's] activities of daily living, including "*caring for his dogs*, watching television, visiting family and friends, attending church services, *driving short distances*, and *occasional hunting* support the ALJ's [RFC] determination." (emphasis added)); *Brim v. Chater*, No. 95-2178, 1996 WL 10288, at *3 (4th Cir. 9 Jan. 1996) (finding no error where ALJ "completely and accurately discussed [plaintiff]'s activities," despite plaintiff's assertion that "the ALJ unfairly focused on several isolated activities to undermine her credibility"). Plaintiff's challenge to it accordingly fails.

## VIII. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 31) for judgment on the pleadings be GRANTED, plaintiff's motion (D.E. 22) for judgment on the pleadings be DENIED, and the Commissioner's final decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 9 February 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after the filing of objections.

This 26th day of January 2016.

James E. Gates
United States Magistrate Judge