IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-850-FL

| | | |
|---|---|---|
| MIRIAM ELISE REISER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings.

(DE 22, 31). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United

States Magistrate Judge James E. Gates entered a memorandum and recommendation ("M&R"),

wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and

affirm defendant's decision. Plaintiff timely filed objections to the M&R, and defendant did not

respond. Thus, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the

M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final

decision.

**BACKGROUND**

On August 11, 2011, plaintiff filed an application for supplemental security income benefits,

alleging disability beginning January 11, 2011. The application was denied both initially and upon

reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"),

who, after a hearing on January 24, 2013, denied plaintiff's claims by order issued June 13, 2013.

Following the ALJ's denial of her application, plaintiff timely filed a request for review with the

Appeals Council. On September 22, 2014, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. On November 21, 2014, plaintiff timely filed complaint in this court seeking review of defendant's decision.

## COURT'S DISCUSSION

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and

2

recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 11, 2011, the alleged onset date. At step two, the ALJ found that plaintiff had the following severe impairments: arthropathy attributed to Lyme disease, anxiety and depression, and osteoarthritis in her right knee. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations. Applying the special technique for evaluation of mental impairments, the ALJ found that plaintiff's mental impairments resulted in mild restriction in activities of daily living and social

3

functioning, and moderate limitations in concentration, persistence, or pace. In addition, the ALJ found that plaintiff had suffered no extended periods of decompensation.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to certain limitations. Limitations included restriction to the performance of simple, routine, repetitive tasks, and no more than occasional interaction with other workers and the general public. In making this assessment, the ALJ found plaintiff's statements about the severity of her symptoms not fully credible. At step four, the ALJ concluded plaintiff was unable to perform her past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.      Analysis

Plaintiff raises objections to the magistrate judge's treatment of four claims. First, plaintiff argues that the ALJ improperly weighed the opinions of two of her physicians. Second, plaintiff asserts that the ALJ did not account properly for plaintiff's limitations in concentration, persistence, or pace when determining her RFC. Third, plaintiff contends that the ALJ erred in finding plaintiff's subjective complaints about the severity of her symptoms not to be credible. Fourth, plaintiff argues that failure to weigh properly the physicians' opinions, coupled with failure to find her statements credible, caused the ALJ to arrive at an erroneous RFC determination.

1.      Physicians' Opinions

Plaintiff argues that the ALJ erred in assigning only minimal weight to the opinions of her treating physician, Dr. Sabra Bellovin, and one of her consultative examining physicians,

4

Dr. Vinod Shah. Both physicians shared similar opinions that plaintiff is functionally disabled and incapable of performing even sedentary work. (Tr. 559, 670).

An ALJ must weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions from treating sources are given greater weight than opinions from non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, any medical opinion, even one from a treating source, may be given less weight if it is not well supported or if it is inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); see Craig, 76 F.3d at 590. For example, a conclusory, unsupported statement by a physician that "you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

While an ALJ is under no obligation to accept any medical opinion, he or she must nevertheless explain the weight afforded such opinions. See SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); see also Russell v. Comm'r of Soc. Sec., 440 Fed. App'x 163, 164 (4th Cir. 2011). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)).

    a.    Dr. Bellovin

Plaintiff argues the ALJ was wrong to assign only minimal weight to Dr. Bellovin's opinion. In particular, plaintiff asserts four bases of error, arguing that the ALJ should have accorded

5

substantial weight to Dr. Bellovin's opinion where it was internally consistent, made appropriate use of plaintiff's subjective complaints, aligned with other medical evidence in the record, and was not conclusory.

In a medical source statement dated April 5, 2012, Dr. Bellovin expressed her opinion on plaintiff's work capability: "Due to the persistent pain and pervasive exhaustion, as well as cognitive difficulties, I do not feel that [plaintiff] is capable of even sedentary work." (Tr. 670). The ALJ, after describing the content of Dr. Bellovin's treatment notes, considered the weight that should be accorded to Dr. Bellovin's opinion:

> Dr. Bellovin's medical source statement as to her opinion of the claimant's ability to perform work activities is conclusory, providing very little explanation of the evidence relied on in forming that opinion, and given little weight. Indeed, it would appear that Dr. Bellovin's assessment of the claimant's capacity for work-related activities in April 2012 and December 2012 was overshadowed by the claimant's subjective complaints, which are not supported by Dr. Bellovin's own clinical findings and notes. The claimant's testimony that she is essentially bedridden is not reflected in her limitations as expressed to Dr. Bellovin, at least as recorded in the office visit notes. The claimant was noted to have widespread joint pain and fatigue, but not to be bedridden the majority of the time. Her physical examinations noted the claimant to be in no apparent distress, her neck supple but no other comment on finding limitations of range of motion or lack of strength. She merely noted prominent proximal interphalangeal joints. The claimant's neurological workup in November 2012, previously discussed, did not note symptoms, findings or limitations that the claimant was bedridden. She had full range of motion and strength in her extremities. The claimant's most recent mental health treatment and examinations did not note severe cognitive limitations, and indeed she did well on portions related to memory and attention and concentration.

(Tr. 23).

i.      Internal Consistency

First, plaintiff disputes the ALJ's conclusion that Dr. Bellovin's opinion is not supported by the physician's own clinical findings and notes. Plaintiff construes the ALJ's assessment as based upon the reasoning, "that because Dr. Bellovin's treatment notes did not indicate that [plaintiff] was

6

'essentially bedridden,' Dr. Bellovin's opinion was not supported by her clinical findings." (DE 38, 4). Read this way, plaintiff criticizes the ALJ's analysis because "Dr. Bellovin did not opine that [plaintiff] was bedridden; she said that she could not perform full-time work without frequent absence." (Id.).

"[I]f a physician's opinion is not supported by clinical evidence . . . it should be accorded significantly less weight." Craig, 76 F.3d at 590. Where some clinical evidence supports the physician's opinion, and other evidence does not, an ALJ exercises discretion in determining the amount of weight the opinion should be assigned. See id. at 589–90. Consistency of a physician's record of clinical evidence is a proper issue to consider in assessing a physician's opinion, see 20 C.F.R. §§ 404.1520b, 416.920b, and "opinions by medical doctors which are internally inconsistent . . . are entitled to little or no weight." Nicholson v. Comm'r of Soc. Sec. Admin., 600 F. Supp. 2d 740, 753 n.1 (N.D. W. Va. 2009) (citing 20 C.F.R. § 416.927(c)(2), (d)(2)).

Plaintiff mischaracterizes the ALJ's analysis. The ALJ did not construe Dr. Bellovin's opinion to be that plaintiff is disabled because she is bedridden; the ALJ stated clearly that it is "[t]he claimant's testimony that she is essentially bedridden." (Tr. 23) (emphasis added). Instead, the ALJ described plaintiff's subjective testimony as only part of Dr. Bellovin's treatment notes, albeit one that overshadowed other clinical findings. (Id.). In his decision, the ALJ described and considered a number of Dr. Bellovin's other notes and lab reports. For example, "a negative Lyme test, normal complete blood work and liver function tests, negative for antinuclear antibody, . . . . [and a] blood parasite test . . . that revealed no parasites but did show free radical damage," as well as multiple "physical examination[s] [that were] unremarkable." (Tr. 19, 567–660). During plaintiff's most recent visit to Dr. Bellovin, "[t]he only finding on examination was prominent

7

proximal interphalangeal joints." (Tr. 19 ).  In addition, the ALJ's summary of Dr. Bellovin's notes included reports that plaintiff suffered from some degree of limitation from her impairments, such as joint pain and fatigue.  (Tr. 23, 669).  However, nowhere in Dr. Bellovin's treatment notes does she relate this evidence to specific functional limitations.

Such mixed medical evidence does not create a contradiction undermining the ALJ's decision.  See Craig, 76 F.3d at 590.  Rather, it is a proper consideration for the ALJ to take into account in assigning weight to Dr. Bellovin's opinion.  See 20 C.F.R. §§ 404.1520b, 416.920b. Finding inconsistencies in Dr. Bellovin's treatment notes, as well as inconsistency between the doctor's clinical evidence and her medical opinion on plaintiff's disability, provided a sound basis for the ALJ's decision to accord minimal weight to Dr. Bellovin's opinion.  See Craig, 76 F.3d at 589; Nicholson, 600 F. Supp. 2d at 753 n.1.  Having described and considered the medical reports contained in Dr. Bellovin's treatment notes, the ALJ's finding that inconsistencies exist was supported by substantial evidence and must be affirmed.

ii.     Subjective Complaints

Next, plaintiff argues that the ALJ provided insufficient support for his conclusion that Dr. Bellovin relied overly much upon plaintiff's subjective complaints regarding her symptoms. Plaintiff contends that regulations do not preclude consideration of a patient's subjective description of his or her symptoms, citing for support 20 C.F.R. § 404.1527, which describes "[m]edical opinions [as] statements from physicians . . . that reflect judgments about the nature and severity of [a patient's] impairment(s), including [a patient's] symptoms."  § 404.1527(a)(2).

While some reliance on a patient's subjective complaints is permissible, a physician errs in relying overly much upon subjective complaints.  See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.

8

2001) (affirming ALJ's accordance of minimal weight to a medical opinion "based largely upon the claimant's self-reported symptoms"); Schaller v. Colvin, No. 5:13-CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("The ALJ also properly assigned little weight to [the treating physician]'s opinion because it was based primarily upon Claimant's subjective complaints.").

The ALJ found such over-reliance occurred where "Dr. Bellovin's assessment of the claimant's capacity for work-related activities in April 2012 and December 2012 was overshadowed by [plaintiff]'s subjective complaints, which are not supported by Dr. Bellovin's own clinical findings and notes." (Tr. 23). As described previously, the ALJ determined that objective medical evidence in Dr. Bellovin's treatment notes was insufficient to support her opinion of plaintiff's work capabilities. Therefore, the ALJ reasoned, Dr. Bellovin must have relied upon the other evidence in her treatment notes, namely plaintiff's subjective complaints, in order to arrive at her opinion that plaintiff could not perform even sedentary work. (Tr. 23). In addition, the ALJ referenced portions of Dr. Bellovin's notes in which Dr. Bellovin emphasizes plaintiff's reported symptoms and predicts that they will continue to affect her capacity to work. (See e.g., Tr. 670–71, 829). Accordingly, substantial evidence supported the ALJ's conclusion that Dr. Bellovin relied overly much upon plaintiff's subjective complaints in reaching her medical opinion. See Craig, 76 F.3d at 589.

iii.     Consistency with Other Medical Evidence

Plaintiff argues that the ALJ erred in finding Dr. Bellovin's opinion inconsistent with other medical evidence in the record where such other evidence was not relevant to plaintiff's disability. In particular, plaintiff dismisses results of neurological and strength tests as irrelevant in measuring the severity of plaintiff's Lyme disease, partly relying upon Dr. Shah's findings: "The patient has a history of Lyme disease, babesiosis, and fibromyalgia. It seems that generally with those diseases,

9

[plaintiff] would not have any abnormal physical finding, at least I can say, but is sure for fibromyalgia." (Tr. 559).

The ALJ considered evidence from not just Drs. Bellovin and Shah, but also from at least six other medical doctors familiar with plaintiff's conditions. (See Tr. 506–11, 561–66, 672–731, 760–828). For example, the ALJ described plaintiff's "neurological examination[, which was] was entirely within normal limits, and she had full and normal motor strength in her arms and legs." (Tr. 22, 807–10). The ALJ also cited a report on plaintiff's most recent psychiatric consultative examination, which showed plaintiff exhibited only mild symptoms of cognitive limitation. (Tr. 565). Neither plaintiff nor Dr. Bellovin explain how these reports are not relevant to determining plaintiff's work capability, and although Dr. Bellovin acknowledges that plaintiff has some cognitive difficulties, she does not explain how the difficulties might preclude plaintiff from performing sedentary work. (See Tr. 669). Dr. Shah is equivocal in his opinion that such neurological reports are not relevant, and it represents only one doctor's opinion among eight considered by the ALJ. (See Tr. 559). Accordingly, where the ALJ described and considered other medical evidence in the record, and where plaintiff fails to show that other medical evidence is irrelevant to plaintiff's work capability, the ALJ's conclusion that Dr. Bellovin's opinion conflicts with other medical evidence was supported by substantial evidence. See Craig, 76 F.3d at 589.

iv. "Conclusory" Descriptor

Plaintiff disputes the ALJ's description of Dr. Bellovin's opinion as "conclusory, providing very little explanation of the evidence relied on in forming that opinion." (Tr. 23). Rather, plaintiff argues, Dr. Bellovin's evaluation "is actually quite detailed and specific." (DE 38, 2). However,

10

for the reasons stated in the preceding sections, the ALJ explained in detail why he determined Dr. Bellovin's opinion to be conclusory and accorded it little weight. Namely, the treatment notes did not support Dr. Bellovin's opinion on plaintiff's work capability, Dr. Bellovin relied overly much on plaintiff's subjective complaints in order to reach her opinion, and Dr. Bellovin's opinion conflicted with other medical evidence in the record.

In sum, where the ALJ sufficiently explained his reasons for giving little weight to the opinion of Dr. Bellovin, and where that explanation was supported by substantial evidence, see Craig, 76 F.3d at 589, plaintiff's four arguments regarding the ALJ's treatment of Dr. Bellovin's opinion must fail.

b.      Dr. Shah

Plaintiff argues that the ALJ erred in assigning only minimal weight to Dr. Shah's medical opinion regarding plaintiff's work capability. For different reasons, plaintiff faults also the M&R for the same finding. With regard to the ALJ's reasoning, plaintiff argues that the ALJ failed to explain how tests on strength and neurology were relevant for measuring the effects of plaintiff's Lyme disease. With regard to the M&R, plaintiff argues that its finding of an inconsistency between Dr. Shah's treatment notes and his diagnosis is an impermissible, post-hoc justification.

The ALJ described Dr. Shah's consultative examination of plaintiff, and then described his reasons for weighting it as follows:

> The undersigned gives no weight to the comprehensive consultative physical evaluation on referral for disability examination conducted by Vinod Shah, M.D. on October 1, 2011. Dr. Shah relied strictly on the [plaintiff]'s assertion of symptoms and prior medical history without findings on objective examination. As he acknowledged her previous magnetic resonance imaging scan of her brain and cardiac testing were within normal limits. The examination required to justify a diagnosis of fibromyalgia was not conducted, even though some of her symptoms were similar. He found the [plaintiff] capable of sitting, standing and walking 6

11

hours in an 8 hour workday, with minimal limitations for climbing, balancing, stooping, kneeling, crouching or crawling. His statement that she was limited to lifting and carrying no more than ten pounds was inconsistent with findings on examination of full range of motion and strength in her extremities. Her coordination, station, and gait were normal. His statement that her diagnoses would produce significant fatigue and not allow a person to function and rendering them disabled was inconsistent with his own examination. The [plaintiff's] subjective complaints were not verified by objective examination.

(Tr. 19–20).

Where the ALJ described and considered seven other medical doctors' opinions regarding plaintiff's condition, and where he found that at least four of those opinions are inconsistent with Dr. Shah's diagnoses (Tr. 19–24), the ALJ provided sufficient explanation in deciding to assign no weight to Dr. Shah's opinion. See 20 C.F.R. §§ 404.1520b, 416.920b; Craig, 76 F.3d at 590 ("[I]f a physician's opinion is . . . inconsistent with other substantial evidence, it should be accorded significantly less weight.").

With regard to the M&R, the magistrate judge did not err, where he described and considered Dr. Shah's objective treatment notes, compared them to plaintiff's subjective report of symptoms, and found that Dr. Shah's notes were inconsistent with his medical opinion of plaintiff's work capability. Such descriptions of the record demonstrated that substantial evidence supported the ALJ's determination to give no weight to Dr. Shah's opinion. Where the ALJ already explained that the opinion was inconsistent with examination findings, the M&R analysis is not post-hoc rationalization. (Tr. 19–20); see Nicholson, 600 F. Supp. 2d at 753 n.1 ("[O]pinions by medical doctors which are internally inconsistent or inconsistent with other evidence of record are entitled to little or no weight."). Accordingly, where the ALJ provided sufficient reasons for giving little weight to the opinion of Dr. Shah, and where those explanations were supported by substantial evidence, see Craig, 76 F.3d at 589, the court must uphold the ALJ's decision regarding Dr. Shah.

12

2.      Concentration, Persistence, and Pace

Plaintiff argues that the ALJ did not account properly for plaintiff's limitations in concentration, persistence, or pace, as required by Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (internal quotations omitted). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Provided the finding is sufficiently explained in the decision, an "ALJ may find that the concentration, persistence, or pace limitation does not affect [the plaintiff's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." Id. In Mascio, where the ALJ "gave no explanation" on this issue, the Fourth Circuit held that "a remand is in order." Id.

The ALJ noted that plaintiff has moderate difficulties with regard to concentration, persistence, or pace. In making the RFC determination, the ALJ limited plaintiff to "work requiring only simple, repetitive, routine tasks. She should have no more than occasional interaction with other workers and the general public." (Tr. 18). In this case, in contrast to Mascio, the ALJ explained his reasons for finding the concentration, persistence, or pace limitation does not affect plaintiff's ability to work, apart from the limitation to simple, routine, repetitive tasks.

First, the ALJ considered a psychiatric evaluation performed in October 2011 by a consultative physician showing plaintiff demonstrated "minimal impairment of attention and concentration and rather mild impairment of short-term memory." (Tr. 21, 565). The physician found plaintiff's "attention and concentration skills and fund of knowledge were adequate," and

13

concluded that plaintiff's "ability to perform simple repetitive tasks and to persist at those tasks primarily would be only limited by her objective physical findings and somatic complaints." (Tr. 21, 565). The ALJ noted that a psychological evaluation conducted some years prior had shown similar results, particularly that plaintiff's "adaptive behaviors are within the average to high average range and indicate that she is capable of normal functioning." (Tr. 20, 510).

In addition, in reviewing plaintiff's most recent mental health treatment and examinations, the ALJ "did not note severe cognitive limitations, and indeed [plaintiff] did well on portions related to memory and attention and concentration." (Tr. 23, 561–66, 672–94). In particular, the ALJ cited a report finding plaintiff's "[a]ttention, concentration and memory grossly intact." (Tr. 23, 677). The ALJ described the results of plaintiff's "neurological examination [to be] entirely within normal limits" (Tr. 22), and plaintiff's mental status exam showed she "has normal attention and concentration." (Tr. 807).

The ALJ further elaborated on his determination of plaintiff's work capabilities regarding concentration, persistence, or pace, where he described a report by the state agency psychologist, Dr. Robert Stainback, whose opinion the ALJ assigned substantial weight:

> In assessing the claimant's mental functional capacity, the State agency psychologist, Robert Stainback, Ph.D., found the claimant would have some difficulty adapting to changes in the workplace, but should be able to adapt to changes associated with the performance of simple tasks and function adequately in a stable work assignment in a position that was not highly production oriented or socially demanding. She had some deficits in sustained concentration and pace, but the claimant was able to sustain sufficient attention to complete simple routine tasks for a two hour period at a non-production pace, and complete a normal workweek. This opinion is well supported by medically acceptable clinical records and is not inconsistent with the other substantial evidence and, therefore, is entitled to substantial weight.

(Tr. 23–24, 121–39). With regard to sustained concentration and pace, Dr. Stainback specifically found, that plaintiff was not significantly limited in her "ability to perform activities within a

14

schedule, maintain regular attendance, and be punctual within customary tolerance," that plaintiff was not significantly limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and that plaintiff was not significantly limited in her "ability to sustain an ordinary routine without special supervision." (Tr. 135–36). In light of this substantial level of detail in discussing the evidence in the record bearing on mental functional capacity limitations, this case is distinguishable from Mascio, 780 F.3d at 638, and the ALJ provided sufficient explanation to enable meaningful judicial review.

Moreover, the ALJ's RFC included a limitation to only occasional contact with coworkers and the general public, which addresses plaintiff's moderate difficulties in concentration and persistence. See Dixon v. Colvin, No. 4:14-CV-228-FL, 2016 WL 520293, at *7 (E.D.N.C. Jan. 21, 2016) ("[O]nly occasional contact with cowokers and the general public . . . address[es] Claimant's moderate difficulties in concentration and persistence."), adopted by 2016 WL 538460 (Feb. 9, 2016); Weeks v. Colvin, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (finding limitation to "performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounts for difficulties with concentration and persistence). As discussed above, where the ALJ described medical reports showing plaintiff had no significant limitations in her ability to perform at a consistent pace, inclusion in plaintiff's RFC of a limitation on pace was unnecessary. (See Tr. 135–36). Accordingly, the ALJ properly accounted for plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. See Tanner v. Colvin, No. 4:15-CV-27-FL, 2016 WL 626493, at *11 (E.D.N.C. Jan. 21, 2016) ("[I]n this case, it is evident from the ALJ's decision

that the limitation to simple, routine, and repetitive tasks adequately addressed Claimant's ability to stay on task, distinguishing this case from <u>Mascio</u>."), <u>adopted by</u> 2016 WL 617431 (Feb. 16, 2016). In sum, the ALJ accounted properly for plaintiff's limitations in his RFC determination and supplemental limitation, as required by <u>Mascio</u>, 780 F.3d at 683. Accordingly, plaintiff's argument on this basis is without merit.

        3.       Credibility

Plaintiff argues that the ALJ mischaracterized evidence of her daily life as being unsupportive of her subjective complaints regarding the severity of her symptoms, and that this mischaracterization caused the ALJ to find her testimony not to be credible. In particular, plaintiff argues that the ALJ erred in forming a general opinion about plaintiff's testimony that she was bedridden where the ALJ focused upon several isolated incidents where she engaged in physically demanding activities. The M&R cogently addressed the issues raised by plaintiff in this argument, which repeats many of the points plaintiff raised in her original motion for judgment on the pleadings. Accordingly, the court addresses only the most relevant issue of the ALJ's discretion in weighing credibility.

If the ALJ does not find plaintiff's testimony to be credible, the ALJ must cite "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P, 1996 WL 374186, at *2 (July 2, 1996). The ALJ satisfied that requirement here, where he recited in his decision plaintiff's testimony describing comprehensively her activities of daily living, and where he contrasted that with specific evidence in the record demonstrating plaintiff's physically active horseback riding hobby and her engagement in various other physically demanding activities. (Tr. 22–24); <u>see</u> <u>Brim v. Chater</u>, No. 95-2178, 1996 WL 10288, at *3 (4th Cir. Jan. 9, 1996) (finding

16

no error where the ALJ "completely and accurately discussed [plaintiff]'s activities," despite plaintiff's assertion that "the ALJ unfairly focused on several isolated activities to undermine her credibility"). The ALJ's decision regarding plaintiff's credibility was supported by substantial evidence, see Craig, 76 F.3d at 589, and accordingly the court must uphold defendant's decision finding plaintiff's testimony not to be credible.

4.      Residual Functional Capacity

Plaintiff argues that the ALJ's assessment of plaintiff's RFC was flawed, on the bases that the ALJ assigned too little weight to the opinions of Drs. Bellovin and Shah, and that the ALJ improperly found plaintiff's testimony not to be credible. For the reasons explained previously, plaintiff's arguments fail on both of these points. Accordingly, the court rejects plaintiff's argument regarding RFC, and upholds defendant's decision as to plaintiff's capacity to perform light work, subject to certain limitations.

## CONCLUSION

Based on the foregoing, the court ADOPTS the M&R as its own. Plaintiff's motion for judgment on the pleadings (DE 22) is DENIED, and defendant's motion for judgment on the pleadings (DE 31) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED this the 28th day of March, 2016.

LOUISE W. FLANAGAN
United States District Judge